UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MELVIN RAY ARRANT,
CDCR #K98602,

Plaintiff,

vs.

M. ZAMBRANO, HAYES,
DELLINGER, ASFOUR, S. BEYER,

Defendants.

Case No.:  3:20-cv-01220 JLS-AGS

**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) & 28 U.S.C. § 1915A(b); AND (3) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

(ECF Nos. 2, 3)

Plaintiff Melvin Ray Arrant, currently incarcerated at Richard J. Donovan State Prison ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  (*See* Compl., ECF No. 1.)  Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a), but he did file a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).  (*See* ECF No. 2.) Plaintiff has also filed a Motion for a Temporary Restraining Order ("TRO").  (*See* ECF No. 3.)

1

## I.     Motion to Proceed *In Forma Pauperis*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."   28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

///

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016)).  The additional $50 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report as well as a Prison Certificate completed by an RJD accounting officer. *See* ECF Nos. 2 at 4–6; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has carried an average monthly balance of $0.00, had $0.00 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint, and had an available balance of $0.00 on the books at the time of filing. (*See* ECF No. 2 at 4–6.) Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 3) and will not assess an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II.   Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A.   *Legal Standard*

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

3

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Factual Allegations[2]

Plaintiff alleges that he has been requesting a bed or cell move since December of 2019. (Compl. at 4.) Each time, Plaintiff was told he had to wait until a weekend "because that is when convenient bed moves are done." *Id.* Plaintiff claims that he observed other inmates, who he claims are gay, bisexual, or are informants, have their requests for bed moves granted while his request has been ignored. *Id.* Plaintiff, believing he was being discriminated against, filed a CDCR form 22 on February 26, 2020. *Id.* In response, Defendant Zambrano told Plaintiff he "had to fill out unnecessary outdated paperwork" in order to receive a bed move, while at the same time moving another inmate from one cell to another without such paperwork." *Id.* Plaintiff then filed a CDCR form 602. *Id.* When Defendant Zambrano became aware of this, he told Plaintiff that "a 602 ain't shit," and that "legal [beagles] ain't got nothing coming." *Id.* Zambrano also told Plaintiff that he wasn't the only one who knew how to write. *Id.* Zambrano then "generated a falsified RVR [rules

---

[2] Plaintiff makes references to exhibits in his Complaint, but there are no exhibits attached to the Complaint. Plaintiff is advised that if he wants the Court to consider those documents, he must attach them to any amended complaint he files.

violation report] against Plaintiff, accusing him of disrespecting staff by calling Zambrano 'Mark.'" *Id.* When the RVR was dismissed, Plaintiff filed another 602 alleging Zambrano retaliated against him and that he was prevented from presenting evidence which would have established his innocence. *Id.*

Plaintiff also alleges that on December 28, 2019, he saw a medical staff member, Defendant Dellinger, cough on his hands, rub his nose, and then pass out medication to inmates without changing his gloves. *Id.* at 5. When it was Plaintiff's turn to receive medication from Defendant Dellinger, Plaintiff told Dellinger he had seen him dispensing medication after coughing on his hands and rubbing his nose. *Id.* Plaintiff asked Dellinger to dispense his medication directly from the medication dispenser into a cup so that Dellinger would not touch it with his hands. *Id.* Dellinger "became upset," and told Plaintiff "you don't get special treatment." *Id.* When Plaintiff asked for a correct spelling of Dellinger's name in order to submit a 602, Defendant Hayes told Plaintiff they would not give him their names. *Id.* They then threatened to activate the building alarm "in retaliation." *Id.* When Plaintiff eventually did file a 602 regarding the incident, "Supervisor Sanchez removed documents the Plaintiff submitted to her when she interviewed the Plaintiff." *Id.*

On March 5, 2020, Plaintiff asked Defendant Asfour, a recreational therapist, why a PlayStation 3 videogame console had been removed from his Striving to Achieve Rewards Enhanced Outpatient Program ("STAR EOP") Group List. *Id.* at 6. From Plaintiff's description, the "group list" appears to be a list of recreational activities that are available to STAR EOP inmates. *Id.* Asfour "gave a vague reason why, saying 'it was voted off.'" *Id.* Plaintiff pressed Asfour for a more specific reason, and Asfour told Plaintiff there was nothing he could do about it. *Id.* When Plaintiff asked Asfour for the names of the staff members who had voted to remove the PlayStation in order to file a 602, Asfour told Plaintiff that if he filed a 602, "the gaming system will 'never' be put back on the list." *Id.* Asfour also referred Plaintiff's request for the names of the staff members who recommended the removal of the PlayStation from the STAR EOP Group List to Defendant

5

Beyer, who is Asfour's supervisor. *Id.* at 7. Beyer responded that she was not able to give Plaintiff the staff members' names because they were confidential. *Id.*

### C.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D.   Equal Protection

Plaintiff alleges Defendant Zambrano discriminated against him, in violation of his Fourteenth Amendment rights, when he denied Plaintiff bed/cell changes on numerous occasions while granting such changes to inmates who are gay, bisexual, and informants. (Compl. at 4.)

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799, (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982) and *Tigner v. Texas*, 310 U.S. 141, 147 (1940)); *Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993) (per curiam). To establish an equal protection violation, Plaintiff must demonstrate "that the [challenged action], either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the

two groups is justified." *Id.* (citation and quotations omitted).  If the aggrieved party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right, the court applies strict scrutiny.  *City of Cleburne*, 473 U.S. at 439–40. "Government actions that do not . . . involve suspect classifications will be upheld if [they] are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005).  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)).

Plaintiff has not stated an Equal Protection claim because he has not made a sufficient showing that "members of a certain group [are] being treated differently from other persons based on membership in that group." *McLean*, 173 F.3d at 1185.  Plaintiff's statement that he "noticed that a lot" of the inmates who were given bed or cell changes during the week as opposed to the weekend were gay, bisexual, or informants amounts to speculation as to the status of fellow inmates and the reasons for the bed and cell changes he observed.  Moreover, as a prisoner, Plaintiff is not a member of a protected class under the Equal Protection Clause.  *Abney v. Alameida,* 334 F. Supp. 1221, 1230 (S.D. Cal. 2004) (citing *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999)).  Accordingly, the Court dismisses this claim pursuant to 28 U.S.C. § 1915A(b)(1) because Plaintiff has failed to state any § 1983 claim upon which relief could be granted.

### E.   *Retaliation*

Plaintiff alleges Defendants Zambrano, Dellinger, and Asfour retaliated against him for filing or stating an intention to file 602s about them.  To state a valid First Amendment retaliation claim, Plaintiff must assert (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) the state actor's acts "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (internal

quotation marks and emphasis omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009), that is "more than minimal." *Rhodes*, 408 F.3d at 568 n.11.

Plaintiff contends that after he filed a 602 complaining that Defendant Zambrano was discriminating against him by not giving him a bed or cell move, Zambrano told Plaintiff he "ain't the only one who knows how to write." (Compl. at 4.)  Then, on April 4, 2020, Zambrano "generated a falsified RVR against Plaintiff in retaliation[,] accusing the Plaintiff of disrespecting staff by calling c/o Zambrano . . . 'Mark.'" *Id.*

Plaintiff's factual allegations fall short of establishing a retaliation claim because although he has alleged a state actor (Defendant Zambrano) took some adverse action against him (filed a false RVR) because he engaged in protected conduct (complained about Zambrano's refusal to give him a bed/cell move), he has not alleged any facts establishing the action "would chill or silence a person of ordinary firmness from future First Amendment Activities." *Rhodes*, 408 F.3d at 567–68.  Nor does he allege he suffered some other non-minimal harm as a result of the retaliatory action. *See Brodheim*, 584 F.3d at 1269.  In fact, Plaintiff states that the allegedly falsified RVR "was dismissed as counseling." (Compl. at 4.)

Plaintiff also claims that when he asked Defendant Dellinger for the correct spelling of his name in order to file a 602 related to Dellinger's sanitary practices, Defendant Hayes told him they were not going to give him their names, and then Dellinger and Hayes "threated to activate the building alarm in retaliation." *Id.* at 5.  Again, Plaintiff's retaliation claim falls short.  Plaintiff's allegations involve state actors (Defendants Dellinger and Hayes), but Plaintiff does not allege that either took some adverse action against him, only that they threatened to do so.  "[A] threat to retaliate does not violate Section 1983 if the person making the threat never follows through." *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1103 (C.D. Cal. 2010) (citing *Gaut v. Sunn*, 810 F.3d 923, 925 (9th Cir. 1987)) (finding that prisoner's allegation that he was threatened with bodily

harm if he pursued legal redress for beatings did not state a Section 1983 claim).  Moreover, even if the threat to activate the alarm is sufficient to satisfy the adverse action element of a retaliation claim, Plaintiff has not made a sufficient showing that the threat was made *because* he engaged in some protected conduct and not to advance a legitimate correctional goal, such as protecting medical staff from harassment.  "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious," or that they were "'unnecessary to the maintenance of order in the institution.'"  *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)).  Plaintiff's facts are not sufficient to show that the threat to activate the alarm was arbitrary or capricious, or that it was otherwise unnecessary to the maintenance of order in the facility.  *Cf. id.*  In addition, Plaintiff has not made a sufficient factual showing that the action "would chill or silence a person of ordinary firmness from future First Amendment Activities," or that he suffered some other non-minimal harm as a result of action.  *See Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 567–68.

As to Defendant Asfour, Plaintiff claims he retaliated against Plaintiff by refusing to give Plaintiff the names of the staff members who were responsible for the removal of the gaming system from the STAR EOP Group List and by telling Plaintiff that if he filed a 602 about the removal of the gaming, the system would never be put back on the list.  (Compl. at 6.)  As with Plaintiff's previous retaliation claim, Plaintiff does not allege that a state actor (Defendant Asfour) took some adverse action against him, only that he threatened to do so, which is insufficient to satisfy the first prong of a retaliation claim.  *See Hardy*, 690 F. Supp. 2d at 1103; *Gaut*, 810 F.3d at 925.  Plaintiff also has not made any factual showing that Defendant Asfour's action "would chill or silence a person of ordinary firmness from future First Amendment Activities," that he suffered some other non-minimal harm as a result of action, or that his action "did not reasonably advance a legitimate correctional goal."  *See Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 567–68 (finding prisoner's claims of a false disciplinary report, coupled with false statements

to the parole board, and an "angry" threat to the prisoner that his grievance would not "stand" sufficient to allege the "absence of a legitimate penological reason for the alleged adverse actions").

For the foregoing reasons, the Court finds Plaintiff's retaliation claims must be dismissed for failing to state a plausible claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### F.   *Eighth Amendment*

Plaintiff alleges his Eighth Amendment rights were violated by Defendant Dellinger "coughing in his hands, rubbing his nose and passing out medication with the same gloves on without changing them."  (Compl. at 5.)  Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks omitted).   "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *McGuckin*, 974 F.2d at 1059 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337–41 (9th Cir. 1990)).

///

///

10

Plaintiff has failed to state an Eighth Amendment claim with regard to Defendant Dellinger because he has not alleged he suffers from a serious medical need, and he has not alleged that he suffered any injury as a result of Dellinger's actions.

### G.    Due Process

Plaintiff alleges that Defendants Hayes, Asfour, and Beyer refused to provide both their names and other staff members' names to Plaintiff when he asked for the names, violating his First Amendment right to file grievances against them.  (Compl. at 2–3.) Prisoners have no "constitutional entitlement to a specific prison grievance procedure." *Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Daniels v. Aguilera*, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), report and recommendation adopted sub nom. *Daniels v. Aguillera*, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances.").  Thus, the refusal by Hayes, Asfour, and Beyer to provide their names to Plaintiff, by itself, is insufficient to state a claim under § 1983. *Iqbal*, 556 U.S. at 677–78.

## III.    Motion for a Preliminary Injunction and a Temporary Restraining Order

Finally, Plaintiff seeks immediate injunctive relief.  (Mot. for TRO, ECF No. 3.)  In his Motion, Plaintiff alleges that as a result of him filing a 602 and a civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Central District of California in case no. 17cv0393 JVS (AGR) alleging sexual misconduct and the use of racial epithets by staff member G. Richardson at Calipatria State Prison, he has been transferred to five different prisons and "CDCR staff and correctional officers continue to engage in misconduct against Plaintiff."  *Id.* at 3.  He claims he is a "target" of CDCR staff and correctional officers who have "retaliated upon [him] ranging from medical staff and correctional officers." *Id.*  He also claims CDCR staff and correctional officers have placed

Plaintiff's life in danger, though he does not specify how. *Id.* He seeks an injunction preventing specific CDCR employees "M. Zambrano, Sgt. Ryer, Correctional Officers Borchard, Bell, Tapia, Solano, Arranda, Kako, Mendivil. Lt. Miranda, PT Hayes, PT Dellinger, RT Asfour, and Supervisor Dr. S. Beyer" from:

> harassing, inciting, impeding Plaintiff from preparing federal, state and or any legal document in a coordinated effort to prevent Plaintiff from sufficiently prosecuting civil matters that are now pending in the Federal Courts and or any appeal/602-appeal in which California code of Regulations (C.C.R.) and or Federal law grants the rights to perform under the U.S. Constitution.

(Mot. for TRO at 6.)

Plaintiff also asks that the Defendants be ordered not to "incite the Plaintiff's EOP group escorting officers to engage in additional harassment, retaliation, falsification of documents and/or impede the Plaintiff from access to the courts." *Id.*

To the extent Plaintiff seeks a TRO without notice upon an adverse party, he cannot prevail because his submission fails to set out "specific facts in an affidavit or a verified complaint . . . [which] clearly show that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) ("[I]njunctive relief is 'to be used sparingly, and only in a clear and plain case,'" especially when the court is asked to enjoin the conduct of a state agency) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)).

Second, a plaintiff seeking a preliminary injunction must establish (1) a likelihood of succeed on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards

for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction).  As the movant, Plaintiff "must do more than merely allege imminent harm sufficient to establish standing; [he] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988) (holding speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction) (internal citations omitted).

Plaintiff fails to meet any of these requirements.  As discussed above, his Complaint fails to state any plausible claim against Defendants Zambrano, Hayes, Dellinger, Asfour and Beyer upon which § 1983 relief can be granted.  *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 677–78; *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132 (9th Cir. 2008) ("[I]t is not the district court's job to stitch together cognizable claims for relief from [a] wholly deficient pleading." (citation omitted)); *Morrison v. United States*, 270 F. App'x 514, 515 (9th Cir. 2008) (affirming Rule 8 dismissal of pro se complaint "contain[ing] a confusing array of vague and undeveloped allegations," and which "did not allege sufficient facts or jurisdictional basis for any federal claim for relief").  Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits of his claims.  *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits . . . ." (internal quotation marks and citation omitted)); *see also Williams v. Duffy, et al.*, 2019 WL 95924, at *3 (N.D. 2019) ("[Having reached th[e] conclusion [that Plaintiff's complaint failed to state a claim], the Court need not reach the remainder of the *Winter* factors."); *Asberry v. Beard*, 2014 WL 3943459, at *9 (S.D. Cal. 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and therefore he had not shown he was "likely to succeed on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest (citing *Winter*, 555 U.S. at 20)).  Indeed, as to Defendants Sgt. Reyer, correctional

officers Borchard, Bell, Tapia, Solano, Arranda, Kako, Mendivil, and Lt. Miranda, who he has named in the Motion for TRO but not in his Complaint, he has made no specific allegations at all.

Further, the allegations he makes regarding CDCR staff "harassing, inciting, impeding Plaintiff from preparing federal, state and or any legal document" in order to prevent Plaintiff from "prosecuting civil matters" in his Motion for TRO are separate claims unconnected to the claims alleged in his Complaint.  *Cf.* ECF No. 1 at 4–9; *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).

> [T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'  Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

*Pacific Radiation*, 810 F.3d at 636; *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit.  Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit.").

"A court's equitable power lies only over the merits of the case or controversy before it.  When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation*, 810 F.3d at 633.  For these reasons, Plaintiff's Motion for TRO and Preliminary Injunction (ECF No. 4) is **DENIED**.

///

///

///

14

**IV.   Conclusion and Order**

For the reasons explained, the Court:

1.   **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

2.   **DIRECTS** the Secretary of the CDCR, or his designee, to forward whatever the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4.   **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him sixty (60) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does

not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.");

     5.     **DENIES** Plaintiff's Motion for a TRO (ECF No. 3);

     **IT IS SO ORDERED**.

Dated:  September 9, 2020

Hon. Janis L. Sammartino
United States District Judge